UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

WORTH CAPITAL HOLDINGS 99, LLC          CIVIL ACTION

VERSUS

SEAN MCAVOY, ET AL.          NO. 24-00011-BAJ-RLB

## RULING AND ORDER

This is a dispute between a creditor of a company and that company's current and former directors and officers. Now before the Court is the **Motion to Dismiss for Failure to State a Claim (Doc. 6, the "Motion")**, filed by Defendants Scott Kaufman, Sean McAvoy, Heidi Bowman and Phillip Egge (*hereinafter*, "Defendants"). The Motion is opposed. (Doc. 20). For the reasons that follow, the Motion will be granted.

### I. RELEVANT BACKGROUND

The Court accepts the following allegations as true for present purposes:

Defendants are current and former directors and officers of American Natural Energy Corporation (ANEC), an independent exploration and production company. (Doc. 1-7 ¶¶ 5–8). On February 14, 2023, Plaintiff Worth Capital Holdings 99, LLC entered into a Loan Agreement with ANEC, agreeing to lend $725,000 for the recompletion of an oil well in Louisiana. (*Id.* ¶ 17). The Loan Agreement is secured by a Mortgage on numerous oil and gas wells and a lease on land, all located in Louisiana, and a Production Payment Agreement, pursuant to which Worth is a secured creditor of ANEC. (*Id.* ¶¶ 20–27).

Since 2023, ANEC has been unable to pay its debts and has become insolvent. (*Id.* ¶¶ 14, 48). In particular, ANEC has "(i) failed to make payments under the Loan Documents, resulting in an Executory Process Proceeding against it, and (ii) failed to compensate creditors and those vendors and suppliers it engages for maintenance and production operations, resulting in at least $3.4 million in outstanding accounts payable as of November 8, 2023." (Doc. 20 at 2 (citing Doc. 1-7 ¶¶ 3, 28–31)). As part of the Executory Process Proceeding, the 29th Judicial District Court for the Parish of St. Charles directed the properties secured by the Mortgage to be seized and sold and appointed a Keeper to maintain it pending sale. (Doc. 1-7 ¶ 30).

Worth alleges that despite ANEC's insolvency, Defendants "continue to dissipate ANEC's assets for their own personal benefit through the possession of egregious royalty and overriding royalty interests." (*Id.* (citing Doc. 1-7 ¶¶ 33–35). After monthly payment of these royalty interests, ANEC has "little or no income to pay vendors and other creditors, such as Worth." (*Id.* at 3 (citing Doc. 1-7 ¶ 35). Worth further alleges that certain Defendants have expended Loan Proceeds on personal uses and "obstructed ANEC's production and profitability" to prevent Worth foreclosing against ANEC. (*Id.* (citing Doc. 1-7 ¶¶ 32, 36–37). Defendants' actions, which have allegedly harmed ANEC, constitute a breach of fiduciary duties under Delaware law. (Doc. 1-7 ¶ 1).

## II.    PROCEDURAL HISTORY

As a secured creditor of ANEC, Worth initiated this creditor derivative action on behalf of ANEC and against Defendants on November 8, 2023, in the 19th Judicial

District Court for the Parish of East Baton Rouge, Louisiana. (Doc. 1-7). In addition to its derivative claims, Worth seeks relief against Defendants for alleged tortious interference with contractual relations. (*Id.* ¶¶ 60–63). On January 8, 2024, Defendant Sean McAvoy removed Worth's action pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332. (Doc. 1).

## III.   LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (*citing Twombly*, 550 U.S. at 556). When conducting its inquiry, the Court must "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (internal citations omitted).

## IV.  DISCUSSION

### a.  The Nature of Plaintiff's Claims

First, Defendants argue that Plaintiff's claim for breach of fiduciary duty is really a claim for fraudulent transfer and is therefore improperly characterized as derivative in nature. (Doc. 6-1 at 8). As support, Defendants cite to a Delaware Supreme Court case which held that "[a] business entity's insolvency does not convert direct claims like fraudulent transfer claims into derivative claims." *In re FairPoint Ins. Coverage Appeals*, 311 A.3d 760, 769 (Del. 2023), *as revised* (Dec. 19, 2023). But the claims in that case were expressly framed as fraudulent transfer claims, whereas Plaintiff's claim here is "for breach of fiduciary duty against directors and officers," a claim that the Delaware Supreme Court held was "undisputedly derivative when brought on behalf of the business entity." *Id.* The Court declines to rewrite Plaintiff's claim as Defendants request.

### b.  Conflict of Laws

Second, the parties dispute which law the Court should apply to Plaintiff's claims. Defendants argue that Louisiana law should apply, and Plaintiff argues that Delaware law should apply. The Court will determine the appropriate law for each claim in turn.

### i.  Delaware Law Applies to the Claim for Breach of Fiduciary Duties

Defendants seek to apply Louisiana law to Plaintiff's fiduciary duty breach claim because the parties' Loan Agreement, Mortgage, and Production Payment Agreement contain choice-of-law clauses mandating the use of Louisiana law for

4

disputes arising from those documents. (Doc. 23 at 2). Even if those clauses do not apply, Defendants argue that Louisiana's choice of law rules require the application of Louisiana law. Plaintiff counters that in this creditor derivative action, which Plaintiff brings on behalf of ANEC—a Delaware corporation—to protect ANEC's interests, Delaware law must apply. (Doc. 20 at 6–7). The Court agrees with Plaintiff.

In a diversity action, a federal court must apply the choice of law rules of the state in which the district court where the complaint was filed sits. *E.g., Torch Liquidating Tr. ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 385 n.7 (5th Cir. 2009).

Under Louisiana law, "the appropriate starting point in a multistate case is to determine if there is a difference between Louisiana's law and the law of the foreign state." *Jones v. Fin. Indem. Co.*, 52,421 (La. App. 2 Cir. 1/16/19), 264 So. 3d 660, 671 (citing *Champagne*, 893 So. 2d at 786). "If the laws of the states do not conflict, then no choice-of-law analysis is necessary." *Schneider National Transport v. Ford Motor Company,* 280 F.3d 532, 536 (5th Cir. 2002) (citing *W.R. Grace and Co. v. Continental Cas. Co.*, 896 F.2d 865, 874 (5th Cir. 1990)). Here, Louisiana law does not recognize a creditor derivative action, whereas Delaware law does. *Compare Louisiana World Exposition v. Fed. Ins. Co.*, 858 F.2d 233, 241 (5th Cir. 1988) (describing the "principle that corporate creditors may not themselves maintain" a "cause of action by the corporation against its officers and directors for gross negligence, mismanagement and breach of fiduciary duty" as "a feature of the Louisiana law for decades") *with N. Am. Cath. Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 101 (Del.

2007) ("[T]he creditors of an *insolvent* corporation have standing to maintain derivative claims against directors on behalf of the corporation for breaches of fiduciary duties."). Accordingly, there is a true conflict between the two states' laws.

Under Louisiana's choice-of-law statutes, the Court must apply the law of the state whose "policies would be most seriously impaired if its law were not applied to that issue." *See* La. Civ. Code arts. 3515, 3542. Defendants urge that Louisiana's policies would be most impaired if not applied because Plaintiff's suit "alleges relevant actions only in Louisiana." (Doc. 6-1 at 4). This may be true, but Plaintiff's suit invokes Defendants' fiduciary duties to ANEC, a Delaware corporation.

"Under Louisiana law, the law of the place where the corporation was incorporated governs disputes regarding the relationship between the officers, directors, and shareholders and the officers' and directors' fiduciary duties."[1] *Stockstill*, 561 F.3d at 385 n.7; *see Patin v. Thoroughbred Power Boats Inc.,* 294 F.3d 640, 646–47 (5th Cir. 2002). Accordingly, because ANEC was incorporated in Delaware, Delaware substantive law applies to Plaintiffs' claim for breach of fiduciary duties.

### ii.    Louisiana Law Applies to the Tortious Interference Claim

Plaintiff also insists that Delaware law applies to its claim for tortious interference with contract, arguing that under Louisiana's choice-of-law principles,

---

[1] Plaintiffs have plausibly alleged that ANEC is insolvent, and, as explained above, in Delaware, creditors of an insolvent corporation may bring derivative claims against directors and officers of that corporation for breach of fiduciary duties. *Gheewalla*, 930 A.2d at 101.

Delaware's policies would be most seriously impaired if its law were not applied. (Doc. 20 at 7 (citing La. Civ. Code art. 3542)). Defendants argue that Louisiana law should apply because the Petition deals primarily with events taking place in Louisiana. (Doc. 23 at 4–5).

As above, the Court will examine whether a conflict exists between Delaware and Louisiana's versions of tortious interference with a contract.

In *9 to 5 Fashions, Inc. v. Spurney*, the Louisiana Supreme Court recognized a narrow cause of action for tortious interference with contract. 538 So. 2d 228, 229 (La. 1989). This claim requires five separate elements: "(1) the existence of a contract or a legally protected interest between the plaintiff and the corporation; (2) the corporate officer's knowledge of the contract; (3) the officer's intentional inducement or causation of the corporation to breach the contract or his intentional rendition of its performance impossible or more burdensome; (4) absence of justification on the part of the officer; (5) causation of damages to the plaintiff by the breach of contract or difficulty of its performance brought about by the officer." *Berenson v. Administrators of Tulane Univ. Educ. Fund*, No. CV 17-329, 2017 WL 2955728, at *5 (E.D. La. July 11, 2017) (citation and quotations omitted). "Louisiana courts have limited this cause of action by imposing a malice element, which requires that the plaintiff show the defendant acted with actual malice." *O'Meallie v. Great Lakes Reinsurance (UK) PLC*, No. CV 22-4081, 2023 WL 4201766, at *3 (E.D. La. June 27, 2023) (quoting *Bogues v. La. Energy Consultants, Inc.*, 71 So. 3d 1128, 1135 (La. App. 2 Cir. 2011)) (quotations omitted).

7

Delaware law presumes that a corporate officer's actions that cause the corporation to breach a contract were taken for the corporation's benefit. *Id.* (citing *Pennington v. Scioli,* 2011 WL 3568266, at *2 (Del. Super. Feb. 16, 2011)). Accordingly, in order to state a claim for tortious interference against a corporate officer, a plaintiff must plead adequately that the officer (1) "was not pursuing legitimate profit-seeking activities of the affiliated enterprise in good faith," or (2) "was motivated by some malicious or other bad faith purpose to injure the plaintiff." *Yu v. GSM Nation, LLC,* 2018 WL 2272708, at *15–16 (Del. Super. April 24, 2018) (dismissing tortious interference claim against CEO because complaint "fail[ed] to allege the requisite level of bad faith or malice needed").

As described, the two states treat tortious interference in much the same way with respect corporate officers, but Delaware allows the claim with either a showing that the defendant corporate officer was not acting in good faith *or* acted with malice. *See GSM Nation*, 2018 WL 2272708, at *15–16. In contrast, Louisiana requires a showing of actual malice. *See O'Meallie,* 2023 WL 4201766, at *3. Although this is a minor difference, and Plaintiff's claim fails under either approach, the Court will engage in a conflict-of-laws analysis in order to provide clarity to the parties moving forward should Plaintiff choose to amend its complaint.

In determining which state's law applies to the merits of each count, Louisiana Civil Code article 3542 governs the analysis. Article 3542 sets forth the general choice-of-law analysis for tort claims. Under Louisiana law, tort suits are "governed by the law of the state whose policies would be most seriously impaired if its law were

8

not applied to that issue." La. Civ. Code art. 3542. In other words, courts apply the law of the state that would bear the most serious consequences legally, socially, and economically if not applied. *Marchesani v. Pellerin-Milnor Corp.*, 269 F.3d 481, 488 (5th Cir. 2001).

Here, Plaintiff alleges that Defendants tortiously interfered with the Loan Agreement between Plaintiff and ANEC by taking actions that resulted in ANEC being unable to make payments on the loan. (*See* Doc. 20 at 20). Many of the contacts relate to Louisiana, and the agreement itself involves a well recompletion in St. Charles Parish, Louisiana. (Doc. 23 at 1). At issue are "actions in Louisiana by individual defendants who are residents of Utah and Texas, involving contracts centered in Louisiana with Louisiana choice-of-law provisions, and having an alleged impact and injury in Louisiana." (*Id.* at 5). Plaintiff devotes little space to this issue but argues that Delaware's contacts predominate because the claim "arises out of and is intricately related to the duties and responsibilities of a director of a Delaware corporate entity." (Doc. 20 at 7).

As for policies, Articles 3515 and 3542, taken together, enumerate six policies that must be considered in the choice of law analysis with respect to tort claims: (1) upholding the justified expectations of parties; (2) minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state; (3) deterring wrongful conduct; (4) repairing the consequences of injurious acts; (5) discouragement of forum shopping; and (6) interstate uniformity of result. *Marchesani v. Pellerin-Milnor Corp.*, 269 F.3d 481, 487–88 (5th Cir. 2001).

9

Based on the foregoing, the Court finds that Louisiana's policies would be more impaired if Delaware's law were applied. The parties entered into a contract in Louisiana dealing with Louisiana subject matter. As such, it would be reasonable for the parties to expect to be governed by Louisiana law with respect to torts that arise from the contractual relationship. Given such foreseeability and to the extent Louisiana's version of the tort is more restrictive,[2] Louisiana has a greater interest in ensuring that parties entering into Louisiana contracts are free to act in all the ways allowed under Louisiana's law to protect a company's interests. Louisiana's policies allowing for such unencumbered action would therefore be more affected if Delaware law applied here.

### c. Plaintiff's Claim for Breach of Fiduciary Duty

Having determined the law that will apply to each claim, the Court will analyze Defendants' challenge under the appropriate law. First, Plaintiff's claim for breach of fiduciary duty.

Under Delaware law, a plaintiff must prove two elements to successfully bring a claim for breach of fiduciary duty: "(1) that a fiduciary duty existed and (2) that the defendant breached that duty." *Palmer v. Reali*, 211 F. Supp. 3d 655, 666 (D. Del. 2016) (quoting *Beard Rsch., Inc. v. Kates*, 8 A.3d 573, 601 (Del. Ch. 2010)). Fiduciary duties include a duty of care and a duty of loyalty, which apply to both corporate

---

[2] *See Egorov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey*, 183 F.3d 453, 457 (5th Cir. 1999) (recognizing that tortious interference with a contract in Louisiana is a "very limited" and narrow cause of action).

directors and officers alike. *Id.* (quoting *Gantler v. Stephens*, 965 A.2d 695, 708–09 (Del. 2009)).

### i.    Duty of Care

Defendants argue that the allegations in support of a breach of the duty of care are insufficient, conclusory, and lacking in the detail required to state a claim. (*See* Doc. 6-1 at 9–10). The Court agrees.

Under Delaware law, the duty of care requires directors and officers to exercise an "amount of care which ordinarily careful and prudent [people] would use in similar circumstances and consider all material information reasonably available." *In re Walt Disney Co. Derivative Litigation*, 907 A.2d, 693, 749 (Del. Ch. 2005), aff'd, 906 A.2d 27 (Del. 2006) (quoting *Graham v. Allis-Chalmers Mfg. Co.*, 199 A.2d 125, 130 (Del. 1963)). An officer's compliance with the duty of care is evaluated for gross negligence. *See, e.g.*, *In re Pattern Energy Grp. Inc. S'holders Litig.*, No. CV 2020-0357, 2021 WL 1812674, at *66 (Del. Ch. May 6, 2021) (quoting *In re Baker Hughes Inc. Merger Litig.*, No. CV 2019-0638, 2020 WL 6281427, at *5 (Del. Ch. Oct. 27, 2020)). "Gross negligence involves more than simple carelessness. To plead gross negligence, a plaintiff must allege conduct that constitutes reckless indifference or actions that are without the bounds of reason." *Id.* (quoting *Morrison v. Berry*, No. CV 12808-VCG, 2019 WL 7369431, at *22 (Del. Ch. Dec. 31, 2019)). "While the inquiry of whether the claims amount to gross negligence is necessarily fact-specific, the burden to plead gross negligence is a difficult one." *Id.* (quoting *Zucker v. Hassell*, 2016 WL 7011351, at *7 (Del. Ch. Nov. 30, 2016), *aff'd*, 165 A.3d 288 (Del. 2017)).

Plaintiff alleges that Defendants breached their duty of care by:

> (i) allowing the Mortgaged Property to waste prior to the Keeper's appointment, (ii) failing to cause the Company to pay to Plaintiff all rents and revenues from the Mortgaged Property, (iii) failing to cause the Company to comply with the terms of the Loan Documents, (iv) failing to comply with the Keeper, (v) failing to cause the Company to pay vendors, and (vi) cancelling and failing to pursue profitable business agreements.

(Doc. 1-7 ¶ 51). Although these allegations might rise to the level of gross negligence if supported by well-pleaded facts, Plaintiff's "facts" in support of its claim are instead conclusory allegations lacking the details that would "raise the right to relief above the speculative level," making it "plausible, not merely possible." *Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019). Indeed, Plaintiff pleads almost no specific details whatsoever.

For instance, Plaintiff alleges that Defendants "[i]ntentionally with[eld] critical financial information and business records from the Keeper and fail[ed] to disclose the full extent of the Company's accounts payable, which, in turn, hindered the Keeper's ability to administer the [property secured by the Mortgage] to the detriment of the Company." (Doc. 1-7 ¶ 37(a)). But without more factual details, possibly including the nature of the information and records, how the withholding "hindered" the Keeper, how hindering the Keeper harmed ANEC, and when this all happened, the Court is unable to infer "more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. These deficiencies plague Plaintiff's claims. In the very next sentence, Plaintiff alleges that Defendants "wrongly" shut in oil wells, obstructing ANEC's "production and profitability for roughly one month, forcing capital

12

injections." (Doc. 1-7 ¶ 37(b)). Here, again, Plaintiff has failed to provide factual detail that would entitle its claims "to the assumption of truth." *Iqbal*, 556 U.S. at 679.

Throughout its petition, Plaintiff attempts to characterize its vague claims using negative adjectives, like "wrongly" and "fraudulently," (Doc. 1-7 ¶¶ 37(b), (d), (e), (f)), without supplying the details that would reasonably allow an inference that Defendants had committed what Plaintiff alleges. Notably, in Plaintiff's six sentences of allegations regarding Defendants' compliance with the Keeper, Plaintiff fails to identify any Defendant by name, connect any Defendant to any specific actions, include any dates for the allegedly wrongful actions, include any amounts for the alleged harm, or give any detail to explain how Defendants allegedly "[i]ntentionally with[eld] . . . information," "[w]rongly shut[] in oil wells," "[m]isrepresent[ed]" information, "[w]rongly instruct[ed] vendors," "[w]rongly contact[ed] Shell to cancel an . . . agreement," and "[f]raudulently claim[ed] . . . that the Keeper was unable to operate the [property secured by the Mortgage]." (*Id.* ¶ 37). Put simply, Plaintiff "tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (quotation omitted, cleaned up). For this reason, Plaintiff's claim for breach of the fiduciary duty of care fails.

### ii.    Duty of Loyalty

Plaintiff alleges that Defendants breached their fiduciary duty of loyalty in two ways: (1) by possessing "Royalty and Overriding Royalty Interests" that harm the company, and (2) by mismanaging funds to enrich themselves. Defendants argue first that the publicly recorded royalty interests are not unfair or improper and second,

13

that Plaintiff's claims of mismanagement are conclusory and vague. The Court agrees with Defendant.

Under Delaware law, the duty of loyalty requires that the "best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally." *In re Think3, Inc.*, 529 B.R. 147, 175 (Bankr. W.D. Tex. 2015) (quoting *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993). To satisfy the fiduciary duty of loyalty, a fiduciary's decision must objectively be based "entirely on the corporate merits of the transactions" and cannot be "influenced by personal or extraneous considerations." *Cede,* 634 A.2d at 362. A claim for breach of the duty of loyalty is most typically raised when a corporate fiduciary either is involved in "self-dealing" or usurps a "corporate opportunity." *Cede,* 634 A.2d at 360; *Science Accessories Corp. v. Summagraphics Corp.,* 425 A.2d 957, 964 (Del. 1980). Acting with subjective good faith is not a defense. *See In re Primedia, Inc. S'holder's Litig.,* 67 A.3d 455, 489 (Del. Ch. 2013).

Here, Plaintiff alleges that "Defendants have engaged in a series of royalty and overriding royalty acquisitions affecting the wells ANEC operates as lessee under the Oil and Gas Lease," and that those "royalty and overriding royalty interests are substantial, eroding ANEC's net revenue interest in the Oil and Gas Lease and jeopardizing ANEC's ability to operate the [properties secured by the Mortgage] viably." (Doc. 1-7 ¶ 33). But without more, merely possessing royalty interests does not constitute a breach of fiduciary duty, and Plaintiff cites no law to the contrary.

Plaintiff's claim lacks the types of allegations that could give rise to a breach of the duty of loyalty. For instance, Plaintiff does not allege that the royalties paid are excessive, given preference to other similar obligations, or improperly acquired. Nor does Plaintiff allege that the royalties paid to Defendants or entities related to Defendants contributed materially to ANEC's insolvency. Based on Plaintiff's own pleadings, plenty of entities possess royalties similar to, or even of greater value, than Defendants': Plaintiff attaches a chart listing numerous other royalties possessed by various nonparties. (Doc. 1-7 at 79–83). According to the chart, ANEC's royalty interests, all of which are public, date back to 1954, and not one was transferred more recently than 2021, several years *before* Plaintiff issued its loan to ANEC. (*Id.*). In other words, Plaintiff was on notice as to the royalty structure prior to issuing a loan to ANEC, and that structure has apparently not changed since.[3]

It is further unclear what relief Plaintiff seeks, or what Defendants could have done to avoid the charge of disloyalty. Plaintiff suggests that Defendants should have "decline[d] or forfeit[ed]" their royalty interests to avoid ANEC's insolvency, but, again, cites no law in support. (Doc. 20 at 19). As noted, Plaintiff has not shown that Defendants' royalty interests contributed in any significant way to ANEC's insolvency. Moreover, a ruling in Plaintiff's favor here could call into question all

---

[3] Plaintiff also alleges that certain Defendants "appeared to initiate a scheme to acquire disproportionate royalty and overriding royalty interests" by using an intermediary. (Doc. 20 at 17). But a review of the Royalty Schedule attached to Plaintiff's Petition for Damages, which Plaintiff points to as evidence for the alleged scheme, reveals no such machinations. (*See* Doc. 1-7 at 79–83). Instead, the Royalty Schedule shows transfers of royalty interests involving the intermediary to Defendants going at least as far back as 2007, entirely mitigating Plaintiff's claim of surprise at the ties between the intermediary and the Defendants. (*Id.* at 80).

royalty interests in a corporation possessed by any individual who also owes fiduciary duties to that corporation. Indeed, such a ruling could call into question a wide range of run-of-the-mill compensation packages. Perhaps it is for this reason that Plaintiff failed to identify a single other court finding a loyalty breach under the circumstances present here.

The cases Plaintiff does cite are inapposite. In one, the corporate officers "withdrew funds from [a corporate account] to enrich themselves at the expense of the [c]ompany," and terminated all of the company's "administrative and accounting employees, transferring a majority of their functions in conflicted transactions with [Defendant-]affiliated companies in exchange for payments of hundreds of thousands of dollars per month." *Feldman v. Soon-Shiong*, No. CV 2017-0487, 2018 WL 2124063, at *5 (Del. Ch. May 8, 2018). In contrast here, Plaintiff only alleges that Defendants take earnings from long-recorded and, based on Plaintiff's inability to find persuasive case law in support of its position, normal and fair royalties from ANEC.

In the other case cited by Plaintiff, the defendant breached his duty of loyalty when he effectuated a sale of assets for his personal benefit at the plaintiff company's expense, without consulting anyone or delivering any benefit to the company. *Jackson Nat. Life Ins. Co. v. Kennedy*, 741 A.2d 377, 390 (Del. Ch. 1999). Again, this is far from Plaintiff's allegations here.

Nor does Plaintiff even mention the entire fairness standard, against which self-interested transactions of directors and officers are generally measured in

Delaware. *E.g.*, *Quadrant Structured Prod. Co. v. Vertin*, 102 A.3d 155, 183 (Del. Ch. 2014).

Plaintiff also separately alleges two other breaches of the duty of loyalty when Defendant Bowman "used the Loan Proceeds to pay her personal credit card debt" and Defendant Egge "took a substantial portion of the Loan Proceeds through uncashed paychecks." (Doc. 1-7 ¶ 32). As to the former claim, Plaintiff fails to specify whether the credit card debt was incurred for Defendant Bowman's benefit or ANEC's. As Defendants note, and Plaintiff does not deny, Plaintiff could merely be referring to a corporate credit card for which Bowman is a personal guarantor—a fairly standard practice. (Doc. 6-1 at 12). Nor does Plaintiff allege the amount of debt allegedly paid off. As to the latter claim, Plaintiff neglects to clarify whether Defendant Egge cashed the paychecks for his own benefit, or to whom the paychecks belonged—necessary points if attempting to allege unfaithful or disloyal actions. Merely taking uncashed paychecks without more fails to prove harm to ANEC. As such, these claims fail for the same reason the duty of care claim fails: insufficient factual allegations.

In sum, Plaintiff has failed to allege a claim for breach of the duty of loyalty, and Defendants' Motion to Dismiss will be granted as to that claim.

### d. Plaintiff's Claim for Tortious Interference Fails

Finally, the Court turns to Plaintiff's claim for tortious interference with a contract. Plaintiff asserts that Defendants tortiously interfered with its Loan Agreement with ANEC in two different ways: (1) by causing ANEC to breach the

agreement through the payment of "egregious royalty and overriding royalty interests in lieu of paying Plaintiff," (Doc. 1-7 ¶ 61); and (2) by interfering with Plaintiff's rights under the Executory Process Order in various actions allegedly obstructing the Keeper's ability to act, (*Id.* ¶ 62). As explained above, the Court will apply Louisiana law to Plaintiff's claim. For the following reasons, both assertions fail.

First, as to both aspects, Plaintiff has failed to plead that Defendants acted with malice, a required element under Louisiana law. *See O'Meallie v. Great Lakes Reinsurance (UK) PLC*, No. CV 22-4081, 2023 WL 4201766, at *3 (E.D. La. June 27, 2023) (quoting *Bogues v. La. Energy Consultants, Inc.*, 71 So. 3d 1128, 1135 (La. App. 2 Cir. 2011)) ("Louisiana courts have limited [tortious interference with contract] by imposing a malice element, which requires that the plaintiff show the defendant acted with actual malice." (quotations omitted)). Courts applying Louisiana law to this claim have found that actual malice requires "a showing of spite or ill will." *Kalencom Corp. v. Shulman*, No. CV 17-5453, 2018 WL 1739213, at *3 (E.D. La. Apr. 11, 2018) (quoting *Bogues*, 71 So.3d at 1135).

Here, Plaintiff has utterly failed to include any facts that would allow the Court to infer that Defendants acted maliciously to interfere with Plaintiff's contract. *Kalencom Corp.*, 2018 WL 1739213, at *4 (dismissing tortious interference with business relations under Louisiana law and tortious interference with contract claim under Georgia law because plaintiff failed to plead malice); *Schmidt v. Cal-Dive Int'l, Inc.*, 240 F. Supp. 3d 532, 553 (W.D. La. 2017) (dismissing claim for tortious

interference with contract for failure to plead malice); *cf. Carlisle v. Sotirin*, No. CIV.A.04-1549, 2005 WL 78938, at *1, 6 (E.D. La. Jan. 11, 2005) (allowing claim for tortious interference with contract when plaintiff plausibly alleged that defendants had defamed him with false statements in an internal memo designed to prevent defendants' company from doing business with plaintiff). Moreover, Plaintiff's allegations hardly suggest to the Court that Defendants' receipt of "egregious" royalty was done intentionally to prevent ANEC from fulfilling its duties under the Loan Agreement in particular. Rather, Plaintiff's allegations, if true, merely indicate some level of possible negligence as to ANEC's overall financial health, which in turn caused ANEC to breach the Loan Agreement, and likely numerous other contracts. Nothing about the allegations suggest, in other words, that Defendants depleted ANEC's finances with the aim of interfering with Plaintiff's contract, which would be required to satisfy the malice standard.

Second, Plaintiff's argument that Defendants somehow tortiously interfered with Plaintiff's rights under the Executory Process Order fails because the Executory Process Order is not a contract that can be interfered with. An essential element of tortious interference with a contract under Louisiana law is that a contract existed in the first place. A court order, in this case an order from the 29th Judicial District Court, is not a contract. Defendants' actions with respect to the Keeper, as alleged, might constitute interference with a court order, but do not satisfy the elements of tortious interference with respect to the Loan Agreement, and Plaintiff cites no law to the contrary. Put differently, Defendants' duties to comply with the Keeper arose

19

from the court order, not the Loan Agreement. *See Forneris v. Specialty Equip.*, No. CIV. A. 93-2980, 1994 WL 25532, at *2 (E.D. La. Jan. 24, 1994), *aff'd sub nom. Forneris v. Specialty Equip. Co.*, 36 F.3d 91 (5th Cir. 1994) ("Where there is no contract and no requisite duty, there is no possible claim under Louisiana law for tortious interference with contract.").

For these reasons, Plaintiff's claim for tortious interference with contract will be denied.

## V.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants Sean McAvoy, Scott Kaufman, Heidi Bowman, and Phillip Egge's **Motion to Dismiss for Failure to State a Claim (Doc. 6)** be and is hereby **GRANTED**. Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff is **GRANTED LEAVE** to file, within 21 days of this Order, an amended complaint, addressing the deficiencies

explained in this Order.[4]

Baton Rouge, Louisiana, this _22nd_ day of August, 2024

_____

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[4] Rule 15(a) provides that "[t]he court should freely give leave [to amend pleadings] when justice so requires." Fed. R. Civ. P. 15(a)(2). The U.S. Court of Appeals for the Fifth Circuit has held that "[g]ranting leave to amend is especially appropriate . . . when the trial court has dismissed the complaint for failure to state a claim." *Griggs v. Hinds Junior College*, 563 F.2d 179, 180 (5th Cir. 1977).